J. C. ALLEN *v.* T. L. EFFLER *et al.*

(*Knoxville.* September Term, 1921.)

1. **CERTIORARI.** Chancellor's finding of fact, concurred in by court of civil appeals, conclusive.

Chancellor's finding of fact, concurred in by the court of civil appeals, is conclusive, on petition for *certiorari* to the supreme court. (*Post, p.* 689.)

2. **TIME.** Date on which option was given excluded in computing time for performance.

Under a contract giving purchasers an option to buy land "at any time with eighteen days from the date hereof," the date on which the contract was executed is to be excluded in computing the length of time in which the purchasers had the right to exercise the option, in view of Code 1858, section 48. (*Post, pp.* 689, 690.)

3. **TIME.** Whether day of execution included in days for performance "from" execution depends on tenor of instrument and intent.

A question of whether the day on which a contract is executed is to be included or excluded in the period of time within which the contract is to be performed, under provision for performance within specified number of days "from" day of execution, is to be determined according to the tenor of the instrument and the intent of parties. (*Post, pp.* 690—696.)

Cases cited and approved: Pugh v. Leeds, 2 Cowp., 714; Halbert v. San Saba Springs L. Ass'n, 49 L. R. A., 195, 196; Cornell v. Moulton, 3 Denio, 16; Bigelow v. Wilson, 85 Tenn., 485; Taylor v. Brown, 147 U. S., 644; Jones v. Planters' Bank, 24 Tenn., 619.

Cases cited and distinguished: Sheets v. Selden's Lessee, 69 U. S., 177; Trust Co. v. Railway, 101 Tenn., 297.

Code cited and construed: Sec. 48 (Tenn.); Sec. 60. (S.).

4. **TIME.** Law does not recognize fractions of a day.

Generally the law knows no fractions of a day. (*Post, pp.* 690—696.)

5. **VENDOR AND PURCHASER.** Forfeiture not favored.

The rule that the law favors enforcement of rights, and the prevention of forfeiture thereof, applies to forfeiture of options. (*Post, pp.* 696, 697.)

Case cited and approved: Turner v. Odum,, 43 Tenn., 456.

## FROM BLOUNT.

Appeal from the Chancery Court of Blount County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. SAM C. JOHNSON, Chancellor.

LINDSAY, YOUNG & YOUNG and GAMBLE, CRAWFORD & GODDARD, for Allen.

C. T. CATES, JR., T. N. BROWN and BRYAN & DUNN, for Effler et al.

MR. L. D. SMITH, Special Judge, delivered the opinion of the Court.

On March 1, 1920, the complainant, Allen, entered into a contract with the defendants, Effler and wife, to purchase a certain tract of land in Blount county. There was a written contract entered into of an executory character. It recites that Effler and wife "have this day bargained and sold, and do hereby bargain and sell, unto" J. C. Allen certain lands, describing them.

The consideration to be paid is stated in the contract to be $370 per acre, and the property was to be surveyed within ten days thereafter, and deed executed and delivered. The sum of $100 in cash was paid, and the contract stipulated that fifty per cent. of the purchase price

would be paid upon delivery of the deed, and notes executed for the remainder.

Before the execution of this contract with Allen, and on February 12, 1920, Effler and wife entered into a written contract with the defendant Sam T. Broyles, in which they gave to said Broyles the right and option to purchase this same land within eighteen days from the date thereof, specifying the terms and conditions of the purchase; that is to say, at the price of $370 per acre, $2,000 to be paid in cash when the deed was made, and the balance on November 1, at which time possession was to be given, the deed to be put in bank until that time. The contract contained this provision:

"In consideration," etc., "I have given and grant, and do hereby give and grant, to the said Broyles or his assigns the right to purchase at any time within eighteen days from the date hereof, on the terms herein set forth, the property described as follows."

Then follows the description of the same tract of land subsequently contracted to Allen, followed by the following provision:

"And for the consideration aforesaid I hereby covenant and agree to and with said Sam. T. Broyles and his assigns that, if he or they shall at any time within eighteen days from the date hereof elect to purchase said property under this option, I will make to him or them, or to any person or persons whom they may appoint or designate for that purpose, a good and sufficient warranty deed for said premises upon compliance by said Sam. T. Broyles or his assigns with the condition of payment above expressed.

"Witness his hand and seal this 12th day of February, 1920.

his

Tom X Effler.   [Seal.]"

mark

On March 1, 1920, after Effler and wife had executed the contract with Allen, the defendant Broyles notified Effler of his readiness to exercise the option which he had given him for eighteen days from February 12th, and they demanded compliance with the contract. Thereupon, and on that date and at that time, a deed was drawn up and executed by Effler, and $2,000 in cash was paid to him. On the next day Mrs. Effler executed and acknowledged the deed, and same was recorded.

Effler and wife refused to carry out the contract made with Allen, and thereupon he filed the bill in this cause making Effler and wife and Sam. T. Broyles and D. F. Young, to whom Effler and wife had executed the deed parties defendant. The bill is in the nature of an ejectment suit, in which complainant claims ownership of the land under contract with Effler and wife, charging that the deed executed by Effler and wife to Broyles and Young was a cloud upon his title, and seeking specific performance by Effler and wife of the contract of purchase which he entered into with them.

The evidence shows, and the chancellor and court of civil appeals have concurred in the findings, that a few days before the 1st of March, 1920, Allen learned that Effler and wife had given this option to Broyles for eighteen days. Allen wanted this land for the Aluminum Company. He sent for Effler to come to see him, saying that he had a matter of importance which he

wanted to talk over with him, and asked that Effler say
nothing about it to anybody. Effler did not respond to
this invitation, so Allen went out to see him, and there
learned that Effler had given this option to Broyles.
Allen intimated to Effler that this option had expired,
and asked Effler to come to see him the next day. Effler
came in to see Allen on the morning of March 1st and
showed Allen the option he had given Broyles. There-
upon Allen advised Effler that this option had expired,
and induced Effler to enter into a contract with him, which
contract is made the basis of this action.

Allen denied that he had any such knowledge of this
option. There is no doubt of the fact, and it is made
conclusive in this court by the concurrence of the chan-
cellor and the court of civil appeals, but that Allen did
know all about this option. He induced Effler to make
the contract to him upon representation that the option
had expired, and this representation was made after he
had examined and read the option itself.

Of course, if the option had actually expired, his
notice and knowledge of it would not defeat his right; so
the legal question open for our consideration is whether
or not the option to Broyles had expired.

As we have seen, this option was dated and executed
on the 12th of February, 1920, and it granted an option
to Broyles or his assigns, or right to purchase the "land
at any time within eighteen days from the date hereof,"
and the option was exercised on March 1st. The con-
tention of the complainant is that the time expired on
the last day of February.

If the date upon which the contract was executed be
included within the eighteen days, then the option of

144 Tenn.—44

the defendants had expired; if it be excluded, the option had not expired. Hence we are to determine in this case whether the date of the execution of the contract shall be included or excluded in computing the length of time within which the defendants had the right to exercise the option.

The most definite rule that has been given to determine this question is to construe the word "from" used according to the tenor of the instrument and the intent of the parties. Viewing the contract with this principle in mind, it would seem quite clear that it was the intent of the parties that the defendant should have eighteen days—eighteen full days—within which to exercise his option. This could not be done, if we include the day upon which the instrument was executed and exclude the last day. The general rule, of course, is that the law knows no fractions of a day. This case presents no exception to the general rule.

A statement from R. C. L. and one from Cyc. will indicate how the courts generally have dealt with this subject. For convenience we quote from these authorities:

"'*From' Generally.*—Whether the word 'from' is to be construed as inclusive or exclusive of the *terminus a quo* is not settled by the courts. Various rules regarding the construction to be put on the term have been adopted, only later to be discarded and new rules approved. But much of the confusion existing in the cases involving the construction to be placed on the word in computing time will be found to be due to the desire of the courts to give due effect to the intention of the parties as expressed in the particular language or phrase

Allen v. Effler.

used in each case. Since the decision in the leading case of *Pugh* v. *Leeds*, 2 Cowp. (Eng.), 714, the courts have ordinarily proceeded upon the theory that the word 'from' as used to denote the commencement of a period of time, is not *per se* a word either of inclusion or exclusion, but is to be construed as one or other according to the tenor of the instrument or the intent of the parties and the equities of the particular case. Generally speaking, however, 'from' is a term of exclusion, and when a period of time is to be reckoned from a certain day, unless there is something in the context or the circumstances to indicate a different intention, the day from which the time is to be reckoned shall be excluded from the computation and from the period. This rule is apparently based on the desire to avoid forfeitures and give the utmost permissible indulgence to persons required to act within a limited time from a specified day or act. There are decisions to the effect that, in the computation of time from an act done, the day of the act is to be included, although in computing from a day specified the day is to be excluded. Under this rule it has been held that, under a statutory provision that an action for personal injury shall be commenced within one year after the accrual of the cause of action, the day of the injury must be included in computing the limitation against the action. But this distinction does not rest on a sound principle, and in most jurisdictions is no longer recognized. And the general rule now is that in computing time, whether from the date or the day of the date, or from a certain act or event, the day of the date or event is to be included. Under both rules,

in order to avoid the effect of an estoppel or to save a forfeiture, the day on which the act is done will, in the computation of time from the doing of such an act, be excluded.'' 26 R. C. L., 740-742.

"*Private Written Instruments.*—Although a rule prescribed· by statute for computing time by excluding the first day and including the last has been held to apply exclusively to the construction of statutes, it also establishes a convenient canon for the interpretation of contracts, where no different meaning is exhibited by the instrument to be construed; and the general rule that, where time is to run from or after a given day or date, that day is to be excluded from the computation, applies in the construction and interpretation of contracts, and the day the contract is entered into, or other day agreed upon for the commencement of its obligations, is excluded in determining the time when the contract is in effect, except where the contract manifests a different intention of the parties.'' 38 Cyc., 320, 321.

An examination of the cases cited by the authorities above referred to shows that the general· modern rule now is that in computing time, whether from the date or the day of the date, or from a certain act or ,event, the day of the date or event is to be excluded. See notes to case of *Halbert* v. *San Saba Springs L. Assn.,* 49 L. R. A., 195, 196.

In accord with modern authority is the case of *Sheets* v. *Seldon's Lessee,* 69 U. S. (2 Wall.), 177, 17 L. Ed., 825. This was an ejectment suit, instituted to recover possession of property upon the ground that the lessee had failed to pay his rents within the time required by the

lease contract and that he thereby forfeited his lease. Under the lease contract the rents were due on the 1st day of May and November, and it provided that—"If any installment shall remain unpaid for one month from the time it shall become due, all the rights and privileges secured to the lessees shall cease and terminate, and any authorized agent of the lessor of the estate shall have power to enter upon and take possession of the premises."

The supreme court of the United States, speaking through Mr. Justice FIELD, said upon the question of computation of time.

"The rent becoming due on the 1st day of May, the one month from that time within which payment was required to be made to prevent a forfeiture, expired on the 1st day of June following. In the computation of the time, the day upon which the rent became due was to be excluded. The general current of the modern authorities on the interpretation of contracts, and also of statutes, where time is to be computed from a particular day or a particular event, as when an act is to be performed within a specified period from or after a day named, is to exclude the day thus designated, and to include the last day of the specified period. 'When the period allowed for doing an act,' says Mr. Chief Justice BRONSON, 'is to be reckoned from the making of a contract, or the happening of any other event, the day on which the event happened may be regarded as an entirety, or a point of time; and so be excluded from the computation.' *Cornell* v. *Moulton*, 3 Denio, 16. See, also, *Bigelow* v. *Wilson*, 1 Pick., 485."

This rule was again applied and approved in *Taylor* v. *Brown,* 147 U. S., 644, 13 Sup. Ct., 549, 37 L. Ed., 314.

We have no cases in Tennessee contrary to the general rule above referred to. In fact, no case to which our attention has been called is directly in point. A case dealing with the question is that of *Trust Co.* v. *Railway,* 101 Tenn., 297, 47 S. W., 422. In that case there was involved the determination of when foreclosure proceedings might be brought under a mortgage. There were two mortgages involved. In one of the cases there was a provision to this effect:

"If default is made in payment of any interest," etc., "the mortgagor covenants and agrees that within six months after such default shall have occurred, the same default continuing, it will, on demand of the trustee, give possession," etc.

In the other mortgage there was a provision that— "If default is made in payment of principal or interest, and if such default continue for six months, the mortgagee or trustee may take possession and proceed to operate," etc.

The court, in holding that foreclosure proceedings could not be taken until after the expiration of six months, said:

"As an original proposition, free from any controlling or persuasive authority, we would hold that a proper construction of each mortgage is that it is not until after default in payment of interest had continued for six months that foreclosure proceedings or other proceedings to take possession could be had, either in or out of court. Upon any other construction we are unable to

give any force or effect to the words 'within six months,' contained in one mortgage, and 'if such default continue for six months,' in the other. 'Within' a certain time embraces the last day of the time limited, as does the word 'after.' 29 Am. & Eng. Enc. L. 524; 26 Am. & Eng. Enc. L. 4; 1 Am. & Eng. Enc. L. 323. If the provision that 'within six months after default, it still continuing,' does not mean that the mortgagor shall have the six months after default for breathing time to make good the default, we can see no rational meaning to attach to it."

We have several cases dealing with the question as applied to the time within which an act provided by law is to be done, some of which were rendered prior to the enactment of section 48 of the Code of Tennessee which relates to this subject and provides as follows:

"The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Sunday, and then it also shall be excluded."

In the case of *Jones* v. *Planters' Bank,* 5 Humph., 619, 42 Am. Dec., 471, we have the question of computation of time within which a judgment debtor had to redeem lands sold at an execution sale, and it was held that the date of the sale was to be excluded in the computation. The court, in the discussion of the question, made no distinction between an act required to be done by law and one contracted to be performed, and this is true in the case of *Trust Co.* v. *Railway, supra,* and other cases.

It is true that the section of the Code of Tennessee above referred to—section 48 (Shannon's, section 60)—

relates only to acts provided by law to be done; but it is in accord with sound principles to say that a rule prescribed by statute for computing time within which an act required by law to be done is a safe and sound rule to be observed in the interpretation of contracts, where no different meaning is given by the instrument to be construed, or where no different intention is manifest from the contract.

Another principle which induced the application of this interpretation is that which undertakes to favor the enforcement of rights and to prevent a forfeiture of rights. The right given and the right taken under this option was the right to purchase this land at a certain price within a given time. We may therefore extend the time the full limit of which the contract is susceptible, so as to prevent the right granted from being lost.

The case of *Turner* v. *Odum,* 3 Cold., 456, is cited as authority by the complainant to sustain his contention. That case involved the construction of an act of the legislature which authorized the loaning of money at ten per cent., which by its terms took effect from and after the 1st day of September, 1860. The question was upon the construction of the statute. It differs from the case at bar, for here we are to ascertain from a contract the length of time within which the parties intended that the right thereby given should extend. There the question was when the act began to operate; here, when the right granted by the contract expired. There the evident intention of the legislature was to put the act in force on a certain date; here the parties contracted for a right to continue for at least eighteen days.

Allen v. Effler.

The conclusion we have reached is in harmony with the principle applied in that case, in that the right intended to be favored by the contract, as was the right to be favored by the law, was upheld.

We conclude, therefore, that the decrees of the chancery court and the court of civil appeals, holding the defendants' rights prior and superior to those of the complainant, are without error, and the same are affirmed.